UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CHRISTOPHER RYAN MILLER                                                    PLAINTIFF

VERSUS                                           CIVIL ACTION NO. 1:11CV257-LG-RHW

MICHAEL J. ASTRUE                                                          DEFENDANT

### PROPOSED FINDINGS OF FACT AND RECOMMENDATION

Plaintiff Christopher Ryan Miller filed a [1] Complaint on July 7, 2011, for judicial review of Defendant Michael J. Astrue, Commissioner of Social Security's (Commissioner) denial of Miller's application for disability benefits under the Social Security Act. Before the Court is Miller's [24] Motion for Summary Judgment requesting that the Court reverse the decision of the Commissioner and remand the matter to the Administrative Law Judge (ALJ) for further consideration.

On January 8, 2008, Miller filed his application for a period of disability and disability insurance benefits asserting that he has been disabled due to mental impairment since July 6, 2007. Miller was 35 years old at the time of the alleged onset of disability. He has a high school education and past relevant work experience as a hotel bellman.

Miller was admitted to Highland Ridge Hospital in Midvale, Utah on July 6, 2007, for severe depression and a history of binge drinking. Admin. Record at 321-23. He reported depression and suicidal thoughts caused by an impending divorce from his wife. At the date of admission, Dr. Sajid Faizi performed a psychiatric evaluation and diagnosed Miller with bipolar affective disorder, type 2; generalized anxiety disorder; attention deficit hyperactivity disorder;

alcohol dependence in early remission; and polysubstance abuse in early remission. *Id.* at 329. Dr. Faizi reported that Miller was hospitalized for safety concerns because of depression and having suicidal and homicidal thoughts. *Id.* Miller was discharged from the hospital on August 1, 2007. According to the discharge summary, Miller's diagnosis at discharge was major depressive disorder with suicidal ideation and alcoholism. *Id.*

On December 27, 2007, Miller was again hospitalized, this time at Memorial Behavioral Health in Gulfport, Mississippi. *Id.* at 337. Dr. Anthony W. Pollard, a psychologist, examined Miller on December 27, 2007, coincidental with Miller's hospitalization. *Id.* at 346-54. Dr. Pollard made a suggested diagnosis of severe and recurrent depression; generalized anxiety disorder; R/O schiozphreniform disorder (disorganized and disturbed thoughts); alcohol dependence; and polysubstance abuse. *Id.* at 354. Following psychiatric treatment, Miller was discharged on January 2, 2008. *Id.* at 337-345. At discharge, Dr. Tongii Shavers diagnosed Miller with severe, recurrent major depressive disorder; and polysubstance dependence. *Id.* at 341-42.

Dr. J.D. Matherene, a clinical psychologist, conducted an evaluation on April 17, 2008, at the request of the State Agency. *Id.* at 359-64. Dr. Matherne concluded that Miller had substance-abuse mood disorder; alcohol abuse, episodic; substance abuse disorder cocaine, episodic in remission; and mixed personality disorder with borderline and passive aggressive features. Dr. Matherne opined that Miller is moderately impaired in his ability to perform routine, repetitive tasks; and moderately impaired in his ability to interact with co-workers and supervisors. *Id.* at 364.

Dr. Linda Baker conducted a State Agency medical consultation on May 29, 2008. *Id.* at

365-82. Dr. Baker opined that Miller suffered from an affective disorder and a personality disorder. *Id.* at 365. She completed a residual functional capacity assessment. In Section I of the assessment, Dr. Baker checked boxes indicating that Miller is moderately limited in activities of daily living; maintaining social functioning; maintaining concentration, persistence or pace; ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to sustain an ordinary routine without special supervision; ability to work in coordination or proximity to others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; and ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. *Id.* at 375-80. In Section III of the evaluation, Dr. Baker provided a narrative summary of Miller's functional capacity and stated that "[t]he claimant appears capable of understanding and carrying out instructions and can maintain attention and concentration adequately for 2 hour periods in an 8-hour workday. The claimant can complete a normal work week without excessive interruptions from psychological symptoms, can relate appropriately to co-workers and supervisors on a limited basis and can adapt to a job setting." *Id.* at 381.

A report dated December 18, 2008, from Gulf Coast Mental Health Center, listed Miller's conditions as mood disorder, anxiety, polysubstance abuse in early full remission, and personality disorder. The report ruled out bipolar disorder and major depression disorder. *Id.* at 393-94. Although some of the pages in the administrative record appear to be out of order, it appears that

3

the report was completed by Dr. Ismin Zen, a psychiatrist. *Id* at 388.

Dr. William E. O'Donnell performed a psychological evaluation on referral from the Division of Rehabilitation Services of Prince Frederick, Maryland. Dr. O'Donnell diagnosed Miller with bipolar disorder, history of recurrent major depression, history of alcohol dependence, and history of polysubstance dependence. *Id* at 413. Dr. O'Donnell indicated that the "test findings raise some real questions about whether Mr. Miller is capable of any level of competitive employment" and that the long-term vocational prognosis was poor. *Id.*

The ALJ conducted a hearing on April 15, 2010. *Id.* at 84-116. At the hearing, Miller testified that he has been receiving therapy for about one and a half years. He has been prescribed numerous medications, which have been changed frequently. Miller felt that the medications did not improve his condition. Miller indicated that he is confused and that he has memory problems. On his bad days, which occur about 4 to 6 days per week, he spends most of the time on his computer or lying down. *See id.* at 100-110.

A vocational expert also testified at the hearing. *Id.* at 110-13. The ALJ presented a hypothetical question to the vocational expert which assumed no exertional limitations but non-exertional limitations of routine, repetitive tasks with only casual contact with co-workers and occasional contact with the general public and non-confrontational contact with supervisors. *Id.* at 111. The vocational expert opined that Miller could not perform his past relevant work as a bellman, but that he could perform the jobs of hand packager, bench assembler, and dish washer. *Id.* at 111-13.

In his written decision, the ALJ found that Miller suffered from severe impairments of affective disorder; personality disorder; and a history of alcohol abuse. *See id* at 18-26. The ALJ

4

further found that Miller is able to perform work at all exertional levels but is limited to routine, repetitive tasks with casual contact with co-workers and occasional contact with the general public, and that he can accept only non-confrontational supervision. The ALJ concluded that Miller could perform the jobs identified by the vocational expert; therefore, he was not disabled.

## Law and Analysis

The federal district court reviews the Commissioner's decision only to determine whether the final decision is supported by substantial evidence and whether the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). If the court determines the Commissioner's decision to be supported by substantial evidence, then the findings are conclusive and the court must affirm the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *see also* 42 U.S.C. § 405(g). This standard requires supporting evidence that is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court is not permitted to "reweigh the evidence in the record, nor try any issues *de novo*, nor substitute our judgment for the judgment of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988). "'Conflicts in the evidence are for the [Commissioner] and not the courts to resolve.'" *Brown*, 192 F.3d at 496 (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). While the court may alter the Commissioner's decision if based upon faulty legal analysis, the court should defer to the Commissioner's legal conclusions if they are within a permissible meaning of the statutory or regulatory language.

*Chevron, U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837, 843–44 (1984).

A claimant bears the burden of proving the existence of a medically determinable impairment that has prevented the claimant from engaging in substantial gainful employment. 42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 423 (d)(5). The Social Security Administration (SSA) utilizes a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a), § 404.920(a). Under this analysis, the ALJ may decide a claimant is disabled if he finds that (1) the claimant is not employed in substantial gainful activity; (2) the claimant has a severe, medically determinable impairment; (3) the claimant's impairment meets or equals one of the listings in appendix 1 to subpart P of § 404; (4) the impairment prevents the claimant from performing any past relevant work; and (5) the impairment prevents the claimant's ability to adjust to performing any other work. *Id.*

The claimant initially bears the burden of proving disability under the first four steps, but the burden shifts to the SSA for the fifth step. *Chapparo v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987). Therefore, if the claimant proves that he is unable to perform past relevant work, the SSA must demonstrate that the claimant can perform another occupation that exists in significant numbers in the national economy. The burden then shifts back to the claimant to establish that he cannot perform this alternative employment. *Id.*

**ALJ's Consideration of Medical Opinions**

Miller argues that the ALJ failed to give proper consideration to medical opinion evidence. Specifically, Miller contends that the ALJ failed to give proper consideration to the opinions of Dr. Baker, Dr. Matherene, and Dr. O'Donnell.

The opinions, diagnoses, and medical evidence of a treating physician should be accorded

considerable weight in determining disability. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The Social Security Regulations place an affirmative duty on the ALJ to weigh every opinion within the record. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Specifically, the Regulations state "regardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). However, the ALJ is entitled to determine the credibility of medical experts and weigh their opinions accordingly. *Greenspan*, 38 F.3d at 237.

Miller argues that the ALJ failed to reconcile an alleged inconsistency in Dr. Baker's report concerning Miller's residual functional capacity. Miller contrasts Dr. Baker's ratings in Section I of the residual functional capacity assessment with Dr. Baker's narrative in Section III. In Section I, the summary conclusions section, Dr. Baker indicated by checking off various boxes that Miller was moderately limited in certain mental capacities. Under Section III, the functional capacity assessment section, Dr. Baker provided a narrative in which she indicated that Miller is capable of understanding and carrying out instructions and can maintain attention and concentration adequately for two hour periods of an eight-hour workday. Dr. Baker further concluded that Miller is able to complete a normal work week without excessive interruptions from psychological symptoms, can relate appropriately to coworkers and supervisors on a limited basis, and can adapt to a job setting.

Miller argues that the narrative conclusions in Section III of Dr. Baker's assessment are inconsistent with her findings in Section I. Specifically, in Section III, Dr. Baker indicated that Miller is moderately limited in nine occupational categories: ability to understand, remember and carry out detailed instructions; maintain attention and concentration for extended periods; sustain an ordinary routine without special supervision; work in coordination with or proximity

7

to others, or get along with co-workers or peers; ability to complete normal work day and work week without interruptions from psychologically based symptoms; ability to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; and ability to accept instructions and respond appropriately to criticism from supervisors.

The undersigned finds that the ALJ did properly consider and weigh Dr. Baker's report. He gave "deference" to the report and relied on Dr. Baker's narrative of Miller's functional capacity when assigning Miller's limitations. In short, Dr. Baker's narrative of non-exertional limitations in Section III are consistent with the the ALJ's assignment of limitations. Miller, however, contends that the ALJ should have gone beyond the narrative assessment in Section III to do a more thorough analysis of Dr. Baker's summary conclusions in Section I and to reconcile what Miller perceives to be an inconsistency.

The undersigned does not find Section I and Section III to be inconsistent in any direct and obvious manner. Although Dr. Baker found Miller to be moderately limited in certain respects, she nevertheless concluded that Miller is capable of understanding and carrying out instructions and maintaining attention and concentration for two hour periods in an eight hour day. Moreover, Dr. Baker concluded that despite his moderately limiting mental conditions, Miller is capable of completing a normal work week. Thus, Dr. Baker's assessment provides substantial evidence in support of the ALJ's conclusion that Miller is not disabled.

Miller also argues that the ALJ failed to consider the opinion of Dr. Matherene, who concluded that Miller is moderately impaired in his ability to perform routine, repetitive tasks, and moderately impaired in his ability to interact with co-workers and supervisors. Although Dr.

Matherene indicated that Miller was "moderately impaired" in his ability to perform routine, repetitive tasks, he did not conclude that Miller was incapable of performing such tasks. In his analysis, the ALJ points out that Dr. Matherne related Miller's impairments to his history of alcohol and substance abuse. As Miller represented that he no longer abuses any substances, the ALJ concluded that "these limitations would diminish." The ALJ gave Miller some benefit of the doubt and gave "some weight" to Dr. Matherne's opinion when determining Miller's residual functional capacity. Substantially consistent with Dr. Matherene's opinion, the ALJ limited Miller to routine, repetitive tasks with casual contact with co-workers; occasional contact with the general public; and non-confrontational supervision.

Miller also argues that the ALJ failed to consider the medical opinion of Dr. O'Donnell, who found that Miller had difficulty with deliberation, planning and judgment, had difficulty tolerating stress, and had a memory deficit that would make it difficult to learn and remember. Dr. O'Donnell also concluded that the test findings raised questions about whether Miller is capable of employment. The ALJ discussed and assessed Dr. O'Donnell's conclusions, including Dr. O'Donnell's opinion that there were "real questions" of whether Miller was capable of competitive employment. Ultimately, the ALJ gave "no weight" to Dr. O'Donnell's opinion, in part because according to Dr. O'Donnell, Miller's history was vague, uncertain, and defensive; and because at the time of the examination, Miller had chosen to stop medication and was not seeking current psychiatric care. In short, the ALJ considered Dr. O'Donnell's opinion and rejected its conclusions for well-articulated reasons. *See Johnson v. Bowen*, 864 F.2d 340, 347 (5th Cir. 1988). Although Dr. O'Donnell offered an opinion about Miller's employability, an ALJ is not bound to accept statements from a medical provider that an individual cannot work or is

9

disabled because such statements are not medical opinions entitled to deference, but rather legal conclusions reserved for the Commissioner to decide. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In sum, Miller's arguments that the ALJ failed to properly consider the opinions of various medical providers go primarily to the weight and credibility of the evidence. As articulated above, the record contains substantial evidence supporting the ALJ's opinion regarding Miller's non-exertional limitations–in particular the conclusions derived from Dr. Baker. The fact that there may have been some contrary evidence or that the evidence could have been interpreted in a different manner is not sufficient to reverse the decision of the Commissioner.

**Functional Limitations and the Vocational Expert's Hypothetical**

Miller next argues that the ALJ failed to incorporate certain functional limitations into the hypothetical question posed to the vocational expert. Specifically, Miller asserts that the ALJ found Miller to have moderate impairments in concentration, persistence, and pace but then did not present these limitations to the vocational expert.

The undersigned finds that Miller's premise is mistaken. The ALJ did not assign specific non-exertional limitations with respect to Miller's concentration, persistence, and pace; therefore, the ALJ was not required to include these in the hypothetical. Rather, the ALJ's discussion regarding concentration, persistence, and pace occurred at step three of the evaluation process when the ALJ assessed whether Miller's impairment meets or medically equals one of the listed impairments at 12.04, 12.08, and 12.09. In that context, the ALJ stated that "[w]ith regard to concentration, persistence or pace, the claimant has moderate *difficulties*. He *may* have some

10

moderate limitations in this area but given the amount of time he spends on the computer each day, four to five hours, it appears he retains some ability to concentrate." (emphasis added). A careful reading of the ALJ's decision reveals that although the ALJ found that Miller had moderate difficulties; and may have moderate limitations; as to concentration, persistence or pace, the ALJ did not conclude that Miller in fact has moderate limitations as to these qualities. The ALJ found only that there were difficulties in this area that *may* result in limitations. The ALJ then went on to explain that Miller retained the ability to concentrate.

Given that the ALJ made no specific finding of a limitation with respect to concentration, persistence, or pace, there was nothing improper in leaving this out of the hypothetical as presented to the vocational expert. Instead, the ALJ relied on Dr. Baker's conclusions that Miller can maintain attention and concentration adequately for two hour periods in an eight hour day and can complete a normal work week without excessive interruptions. The ALJ also effectively incorporated any limitations as to concentration, persistence, and pace into the hypothetical by limiting Miller to routine, repetitive tasks and unskilled labor.

### **Anxiety as a Severe Impairment**

Miller next argues that the ALJ failed to consider the fact that Miller may suffer from a significant impairment of anxiety. Miller conjectures that the ALJ may have failed to consider anxiety as a severe impairment because he used an improper standard for evaluating severe impairments.

Whether or not Miller suffered from a severe impairment of anxiety had no material impact on the ALJ's disability determination. The ALJ assessed whether Miller had any severe impairments at step two of the evaluation process. The ALJ concluded that Miller indeed did

suffer from severe impairments; namely affective disorder, personality disorder, and history of alcohol abuse. Having found that Miller suffered from a severe impairment, the ALJ then proceeded to the next step in the evaluation process. In other words, the ALJ would have proceeded to step three of the evaluation process regardless of whether anxiety had been included as one of the list of severe impairments.

The case law cited by Miller is distinguishable. In *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), the ALJ found the claimant to be *not* disabled at step two of the five step sequential process. In the instant case, the ALJ determined that Miller did meet the requirements of a severe impairment at step two and accordingly continued on to the next step in the process. In *Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000), the ALJ erred by finding that the claimant did not have a severe mental impairment, in part because the ALJ found that claimant was at most slightly restricted in his "activities of daily living". The Fifth Circuit explained that "an impairment can be considered not severe only if it is a slight abnormality having such minimal effect on an individual's ability to *work*, irrespective of age, education or work experience. The ALJ erroneously applied his own standard involving a slight restriction in 'activities of daily living'". *Id.* at 392 (emphasis in original). By contrast, in the instant case, the ALJ found that the claimant did suffer from a severe mental impairment, and the ALJ recited a severity standard that considers the individual's ability "to perform basic work activities" and "ability to work". The ALJ in the instant case did not, as was the case in *Loza*, focus his severity analysis on the claimant's activities of daily living.

In his motion, Miller fails to adequately explain how adding anxiety as a severe impairment at step two would have affected the ALJ's assessment of non-exertional limitations at

step four.  Nor has Miller explained how the addition of anxiety as a severe impairment at step two would have altered the ALJ's conclusion at step five that despite his impairments and limitations, Miller is capable of performing jobs that exist in significant numbers in the national economy.  *See Jones v. Bowen*, 829 F.2d 524, 526 n.1 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987).

Even taking into account the medical opinion evidence that suggests Miller suffers from an anxiety-related impairment, the ALJ incorporated limitations identified by these medical providers.  In his motion, Miller identified only two medical opinion sources as evidence of an anxiety-related impairment:  (1) medical records from Gulf Coast Mental Health Center and (2) Dr. Matherne's report.  The former offered no opinion about Miller's limitations, resulting from anxiety or any other impairment.  Dr. Matherne did offer an opinion regarding Miller's limitations as a result of his various mental impairments (not just anxiety).  Dr. Matherne indicated that Miller was only moderately limited in his ability to perform routine, repetitive tasks, with moderate impairments in his ability to interact with co-workers and supervisors.  As explained above, the ALJ gave Dr. Matherne "some weight" and accounted for Dr. Matherne's conclusions by limiting Miller to routine, repetitive tasks and only casual contact with co-workers, occasional contact with the general public, and non-confrontational supervision.

**Miller's Ability to Perform Jobs Involving Detailed Instructions**

Miller next asserts that the ALJ failed to establish at step five the existence of work that Miller can perform.  Miller argues that the jobs identified by the vocational expert all require level two reasoning.  Accordingly, these jobs require the ability to deal with detailed written or oral instructions.  Given that  Dr. Baker concluded that Miller was significantly limited with

13

regard to his ability to understand, remember and carry out detailed instructions, Miller argues that he is incapable of performing jobs that require level two reasoning. However, in the hypothetical, the ALJ merely indicated that Miller could perform only routine, repetitive tasks without taking into account his ability to deal with detailed instructions.

As an initial matter, the undersigned finds that Miller misstates the record to some degree. Although it may be a mere exercise in semantics, Dr. Baker actually indicated that Miller was *moderately* limited, not *significantly* limited, in his ability to understand, remember and carry out detailed instructions. Miller then relies on what he argues is an apparent contradiction in Dr. Baker's report to conclude that the ALJ's assignment of functional limitations was insufficient and that the vocational expert then relied on these allegedly erroneous functional limitations. As explained earlier, despite Dr. Baker's finding that Miller was moderately limited in certain mental capacities, she nevertheless concluded that Miller "appears capable of understanding and carrying out instructions". The ability, even if moderately limited, to understand and carry out instructions does not preclude the ability to understand, remember and carry out detailed instructions. Because the undersigned rejects the premise that Dr. Baker's report contains unreconciled inconsistencies, the undersigned further rejects Miller's string of inferences that flow from that premise. The ALJ relied on Dr. Baker's medical opinion that Miller indeed can understand and carry instructions. In turn, the ALJ relied on the vocational expert's identification of jobs with level two reasoning to find that Miller is not disabled.

**Conclusion**

In conclusion, the undersigned finds that the ALJ used the proper legal standards and that his opinion is supported by substantial evidence.

14

## RECOMMENDATION

Based on the foregoing, the undersigned recommends DENYING Miller's [24] Motion for Summary Judgment.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed **factual findings and legal conclusions** that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 17th day of September, 2012.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE